IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02608-MSK-CBS

BRADLEY W. RAMMINGER,
    Plaintiff,
v.

JOHN HICKENLOOPER, as Governor of the State of Colorado,
THE STATE OF COLORADO,
JAMES DAVIS, as Executive Director of Colorado Department of Public Safety,
THE COLORADO DEPARTMENT OF PUBLIC SAFETY,
COLONEL SCOTT HERNANDEZ, as Chief of the Colorado State Patrol,
THE COLORADO STATE PATROL, and
MICHAEL CARR,
    Defendants.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on Defendants' "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)." Pursuant to the Order Referring Case dated October 1, 2013 (Doc. # 7) and the memorandum dated October 24, 2013 (Doc. # 14), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Plaintiff's Response (filed November 18, 2013) (Doc. # 19), Defendants' Reply (filed December 5, 2013) (Doc. # 20), the pleadings, the entire case file, the hearing held on December 19, 2013 (*See* Courtroom Minutes/Minute Order (Doc. # 21)), and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Mr. Ramminger sues Defendants for damages arising out of his arrest pursuant to a

1

bench warrant issued for someone else who used his identity. On January 6, 2010, Defendant Carr, a Colorado State Trooper, stopped a vehicle driven by a driver who identified himself as Bradley Ramminger. (*See* Complaint (Doc. # 1-1) at 8-9 of 18). Defendant Carr arrested the driver and issued him a Uniform Summons and Complaint for Penalty Assessment ("traffic citation") in Mr. Ramminger's name for driving while under the influence of drugs and weaving. (*See id.* at 8, 15 of 18). The driver signed the traffic citation using Mr. Ramminger's name. (*See id.* at 15 of 18). Defendant Carr did not discover that the driver was not Mr. Ramminger.

The traffic citation directed Mr. Ramminger to appear in El Paso County Court on February 25, 2010 at 10:00 a.m. (*See id.* at 8, 15 of 18). As neither the driver nor Mr. Ramminger appeared on February 25, 2010, the El Paso County Court issued a bench warrant for Mr. Ramminger's arrest. (*See id.* at 8 of 18). When Mr. Ramminger went to an office of the Colorado Department of Motor Vehicles on an unspecified date in 2012 to renew his driver's license, he was informed that his license could not be renewed due to an outstanding traffic citation. (*See id.*). Upon inquiring at the El Paso County Court, Mr. Ramminger was arrested on the bench warrant and held in custody for an unspecified period of time until he posted bond. (*See id.*). On September 13, 2012, the County Court dismissed the traffic citation without objection by the prosecutor because Defendant Carr identified another man in a line-up as the driver he had ticketed. (*See id.* at 9, 16 of 18).

In his First Cause of Action, Mr. Ramminger alleges pursuant to Title 42 U.S.C. § 1983 that Defendants violated his constitutional rights of due process of law and equal protection under the 5th and 14th Amendments to the U.S. Constitution and his right not to be subjected to warrantless searches and seizures under the 4th Amendment to the U.S. Constitution and article II, § 7 of the Colorado Constitution. (*See* Doc. # 1-1 at 9-10 of 18). In his Second

2

through Sixth Causes of Action, Mr. Ramminger alleges negligence, intentional infliction of emotional distress, false arrest, respondeat superior, malicious prosecution, and abuse of process under state law.  (*See* Doc. # 1-1 at 10-12 of 18).   He seeks damages, including punitive damages.  (*See id.* at 10-13 of 18).

II.     Standard of Review

Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).   Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."   Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.   *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).

Fed. R. Civ. P. Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."

> In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled allegations . . . as true and view those allegations in the light most favorable to [Plaintiff].   The Court must limit its consideration to the four corners of the Complaint, any documents attached thereto, and any external documents that are referenced in the Complaint and the accuracy of which is not in dispute.
> A claim is subject to dismissal if it fails to state a claim for relief that is plausible on its face.   To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.   The Court takes the remaining, well-pled factual contentions as true and ascertains whether those facts, coupled with the law establishing the elements of the claim, support a claim that is plausible or whether the claim being asserted is merely conceivable or possible under the facts alleged.   What is required to reach the level of plausibility varies from context to context, but generally, allegations that are so general that they encompass a wide swath of

conduct, much of it innocent, will not be sufficient.

*Zasada v. City of Englewood,* No. 11-cv-02834-MSK-KMT, 2013 WL 1331455, at * 3 (D. Colo. March 29, 2013) (internal quotation marks and citations omitted).

III.   Analysis

Section 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law." *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970). Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). "In order to successfully state a cause of action under section 1983, [Plaintiff] must allege . . . the deprivation of a federal right and that the alleged action was taken under color of state law." *Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) (internal quotation marks and citation omitted).

A.   Fifth Amendment Claim

Mr. Ramminger alleges violation of the Fifth Amendment to the U.S. Constitution. (*See* Doc. # 1-1, at 10 of 18). The Fifth Amendment protects against due process violations by the federal government. *See Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461 (1952) (Fifth Amendment applies to and restricts only the Federal Government and not private persons). "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.' " *Dusenberry v. United* States, 534 U.S. 161, 167

(2002). There is no allegation in this civil action of any conduct by federal government actors. Defendants are or were employees of the State of Colorado. Mr. Ramminger does not state a Fifth Amendment claim.

B.      Fourteenth Amendment Equal Protection Claim

The Equal Protection Clause requires that no state "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. The Equal Protection clause is triggered only when the government treats someone differently than another who is similarly situated. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). *See also Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998) ("The allegation that a plaintiff was treated differently from those similarly situated is an essential element of an equal protection action."); *Jacobs, Visconsi & Jacobs v. City of Lawrence*, 927 F.2d 1111, 1118-19 (10th Cir. 1991) (discussing "similarly situated" requirement of equal protection claim); *Buckley Const., Inc. v. Shawnee Civic & Cultural Development Authority,* 933 F.2d 853, 859 (10th Cir. 1991) (complaint failed to allege "an element of intentional or purposeful discrimination" sufficient "to invoke the equal protection doctrine").

Mr. Ramminger makes only one general reference and no specific factual allegations in support of a claim for violation of his equal protection rights. (*See* Doc. # 1-1 at 10 of 18). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). The court does not accept as true "threadbare recitals of the elements of a cause of action" that are merely legal conclusions and not facts that allow the court to draw the reasonable inference that the

5

defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Mr. Ramminger has not alleged an essential element of an equal protection claim: that he was intentionally treated differently than another who was similarly situated. "[T]o assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998). Mr. Ramminger's equal protection claim is properly dismissed for failure to state a claim to which relief can be granted.

C. Fourteenth Amendment Due Process and Fourth Amendment Claims

1. Defendants State of Colorado, Colorado Department of Public Safety, and Colorado State Patrol

Section 1983 permits "citizen[s]" and "other person[s] within the jurisdiction" of the United States to seek legal and equitable relief from "*person[s]*" who, under color of state law, deprive them of federally protected rights. 42 U.S.C. § 1983 (emphasis added). "Neither states nor state officers sued in their official capacity are 'persons' subject to suit under section 1983." *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir.1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989)). Defendant Colorado State Patrol is a division of Defendant Colorado Department of Public Safety, Colo. Rev. Stat. § 24-33.5-201, *et seq.* which is an agency of the State of Colorado. Colo. Rev. Stat. § 24-33.5-101, *et seq.* Mr. Ramminger's First Cause of Action fails to state a claim to which relief can be granted for money damages against Defendants State of Colorado, Colorado Department of Public Safety, and Colorado State Patrol.[1]

---

[1] Mr. Ramminger does not allege any claim for injunctive relief. *See Ex Parte Young*, 209 U.S. 123 (1908) (allowing for official capacity claims seeking prospective injunctive relief against state officials).

6

2. Defendants Carr, Hickenlooper, Davis, and Hernandez

While Mr. Ramminger alleges in his Complaint that "[e]very act of Defendants alleged herein were done by Defendants, each of them, not as individuals, . . ." he has since clarified that his "First Claim is against the Defendants in their individual capacities." (*See* Doc. # 19 at 2 of 11). State officers sued in their individual capacities "are 'persons' subject to suit under section 1983." *Duncan*, 15 F.3d at 991. Thus, the court considers Mr. Ramminger's claims against Defendants Carr, Hickenlooper, Davis, and Hernandez in their individual capacities.

a. Defendant Carr

Mr. Ramminger argues that "Mr. Carr is the actor who is alleged to be the direct cause of the violation of Mr. Ramminger's constitutional right under the 14th and 4th Amendments to be free from unlawful seizure which could have been avoided by Mr. Carr verifying that the person Mr. Carr ticketed was, in fact, not Mr. Ramminger." (*See* Doc. # 19 at 3 of 13). Claims involving seizures are governed by the Fourth Amendment, U.S. CONST. amend. IV.[2] The Fourth Amendment's "central requirement" is one of reasonableness. *See Texas v. Brown*, 460 U.S. 730, 739 (1983). *See also Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989) (emphasizing that seizure "alone is not enough for § 1983 liability; the seizure must be unreasonable") (internal quotation marks omitted); *Jama v. City and County of Denver*, No. 08-cv-01693-MSK-KLM, 2011 WL 3365049, at * 6 (D. Colo. Aug. 4, 2011) ("[M]istaken identity arrests are governed by a reasonableness standard. . . .") (citation omitted). "[C]ourts have long recognized that the reasonableness of a seizure depends not just on why or when it is

---

[2] The protections of the Fourth Amendment are made applicable to the states through the Fourteenth Amendment. U.S. Const. amend. XIV; *Michigan v. Summers*, 452 U.S. 692, 694 n. 2 (1981); *Marshall v. Columbia Lea Regional Hosp.*, 345 F. 3d 1157, 1171 (10th Cir. 2003).

made, but also on how it is accomplished."  *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (citation omitted).   To state a constitutional violation, a plaintiff must allege both that a defendant's conduct constituted a seizure, and that the seizure was unreasonable. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994).

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, . . . must be the guide for analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks and citation omitted).   The deprivations which Mr. Ramminger alleges are protected under the Fourth Amendment and are thus properly analyzed under the reasonableness standard of the Fourth Amendment, rather than the Fourteenth Amendment. *See, e.g., Arbuckle v. City of Chattanooga*, 696 F. Supp. 2d 907, 921 (E.D.Tenn. 2010) ("Where a plaintiff's claims under the Fourteenth Amendment arise out of a common nucleus of facts and pertain to an alleged wrongful search or seizure, it is appropriate to analyze such claims under the reasonableness standard of the Fourth Amendment instead of an analysis of substantive due process rights.") (citations omitted).

Defendant Carr raises the defense of qualified immunity to Mr. Ramminger's First Cause of Action against him in his individual capacity.   "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244 (2012) (internal quotation marks and citations omitted).   *See also Duncan*, 15 F.3d at 992 (same) (internal quotation marks and citations omitted).   Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct. With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.* *See also Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003) (Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional or statutory right and (2) the constitutional or statutory right was clearly established when the alleged violation occurred)).

"The clearly established inquiry examines whether the contours of the constitutional right were so well-settled, in the particular circumstances presented, that every reasonable [state] official would have understood that what he is doing violates that right. *Lane v. Yohn*, No. 12-cv-02183-MSK-MEH, 2013 WL 4781617, at * 3 (D. Colo. Sept. 6, 2013) (internal quotation marks and citation omitted). "To satisfy this prong, the burden is on the plaintiff to point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes an actionable constitutional violation in the circumstances presented." *Id.* "It is not necessary for the plaintiff to adduce a case with identical facts, but the plaintiff must identify some authority that considers the issue not as a broad general proposition, but in a

9

particularized sense . . . ."  *Id.*  There must be "a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited."  *Duncan*, 15 F.3d at 992.(internal quotation marks and citations omitted).

The court concludes that under either the Fourth or the Fourteenth Amendment, Defendant Carr is entitled to qualified immunity because he did not violate a statutory or constitutional right that is clearly established.  Mr. Ramminger has not cited and the court has not found any clearly established law in a mistaken identity case that "stands for the proposition that the mere failure to discover the error is a constitutional violation in circumstances where the arrestee matches the fugitive in many respects and has the ability and opportunity, including a court hearing, to bring the mistake to light . . . ."  *Reyes v. Board of County Com'rs*, No. 06-cv-02319-WDM-BNB, 2008 WL 961565, at * 5 (D. Colo. April 8, 2008).  To the contrary, "an officer does not have an affirmative duty to investigate every claim of mistaken identity."  *Jama*, 2011 WL 3365049, at * 6 n. 3 (citing *Reyes*, 2008 WL 961565).  *See also Scull v. New Mexico*, 236 F.3d 588, 598 (10th Cir. 2000) (where plaintiff arrested on facially valid warrant, jailers have no constitutional duty to independently investigate claims of mistaken detention);  *Rudkin v. Sedgwick County, Kansas*, 469 F. Supp. 2d 953, 960 (D. Kan. 2007) (holding "that a person arrested pursuant to a valid warrant suffers no violation of his substantive due process rights when police continue the detention for a reasonable time even after ascertaining that the detainee is innocent.");  *Echols v. Unified Government of Wyandotte County*, 399 F. Supp. 2d 1201, 1206 (D. Kan. 2005) ("Under the law of the Tenth Circuit, there is no constitutional violation in this case because a police officer has no duty to investigate a detained prisoner's claim of innocence if the prisoner was arrested on a facially valid warrant . . . So long as a judge was aware that Mr. Echols potentially was being detained because of a mistaken identity, there

is no basis to impose liability against any of the police officers."). Here, no assertion of mistaken identity was raised until Mr. Ramminger was arrested by an unidentified individual on a bench warrant two and a half years after Defendant Carr issued a traffic citation to the unknown driver. Mr. Ramminger does not allege any discrepancies between descriptors of him and the unknown driver. (*See* Doc. # 1-1 at 15 of 18 (describing race, gender, height, weight, hair color, and eye color of driver)). *See Jama*, 2011 WL 3365049, at * 6 n. 3 (discrepancies in middle name, birthdate, and physical descriptors did not demonstrate that an arrest was unreasonable). Further, even if the court were to recognize a due process right for the deprivation of liberty from a mistaken pre-trial detention, Mr. Ramminger's unspecified period of detention is insufficient to violate this right. See *Rudkin*, 469 F. Supp. 2d at 960 n. 1 (detention of four and a half hours insufficient to violate substantive due process right for deprivation of liberty from a mistaken pretrial detention) (citation omitted). In sum, Mr. Ramminger fails to overcome an essential prong of the qualified immunity defense: that a statutory or constitutional right was clearly established under the governing law of the United States Supreme Court, the Tenth Circuit Court of Appeals, or the clear weight of other circuit courts. Mr. Ramminger's allegations are not sufficient, as a matter of law, to support a claim for violation of his Fourth or Fourteenth Amendment rights.

      b.     Defendants Hickenlooper, Davis, and Hernandez

Mr. Ramminger alleges that '[t]he conduct of Defendant, Michael Carr was pursuant to an established or tacit policy, and acquiescence to a policy, a lack of existing but necessary policy, or an acquiescence to the lack of a policy, as directed by the Colorado State Patrol, and/or the Chief of the State Patrol, Scott Hernandez, which led to the deprivation of rights of

Plaintiff." (*See* Doc. # 1-1 at 9 of 18, ¶ 3*).* Mr. Ramminger asserts his First Cause of Action against Defendants Hickenlooper, Davis, and Hernandez in their individual capacities as supervisors.

First, as the court has determined that Mr. Ramminger fails to state an underlying constitutional violation by Defendant Carr, he fails to state a claim for relief against Defendants Hickenlooper, Davis, or Hernandez in their supervisory capacities. *See, e.g., Estate of Larsen ex. Rel Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008) ("without the predicate constitutional harm inflicted by an officer, no municipal liability exists") (citation omitted); *Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1156 (10th Cir. 2001) (absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability imposed on the city on account of its policies, customs, and/or supervision with regard to the individual defendants); *Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 132 (2d Cir. 1997) ("a claim of inadequate training and supervision under § 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised") (citation omitted).

Second, "supervisory status alone does not create § 1983 liability." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted). "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). There must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quotation and brackets omitted). *See also Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the

defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial");  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

Mr. Ramminger states no facts at all regarding Defendants Hickenlooper, Davis, or Hernandez, much less any facts from which it may be inferred that they personally participated in the alleged violations.   He alleges only that these three Defendants were acting in their capacities as Colorado's Chief Executive, Executive Director of the Colorado Department of Public Safety, and Chief of the Colorado State Patrol.   (*See* Doc. # 1-1 at 7 of 18, ¶¶ 2-4*).* The allegations do not identify any conduct by these Defendants that give rise to a constitutional violation.   For this reason also, Mr. Ramminger does not state a claim to which relief can be granted against Defendants Hickenlooper, Davis, or Hernandez in their individual capacities.

Mr. Ramminger further responds to Defendants' Motion by arguing that "his damages resulted from a tacit policy, an acquiescence to a tacit policy, a lack of existing, but necessary policy, or acquiescence to the lack of a policy which would have verified that any person to be charged with a crime is the person he represents himself to be."   (*See* Doc. # 19 at 4 of 13). He argues that these three Defendants "directly approved a tacit policy not to prove identity, or, an acquiescence to a policy, or the lack of an existing, but necessary policy, or acquiescence to the lack of such a policy."   (*See id.*).   He states "it is plausible that their regulations, customs, or usage, or knowing indifference to how the identity of persons to be ticketed for traffic offenses were to be verified were direct causes" of his damages.   (*See id.* at 5 of 13).   (*See id.*).

To the extent that Mr. Ramminger is attempting to hold Defendants Hickenlooper, Davis, and Hernandez liable in their individual capacities based on a policy, municipalities and other

13

local government units are "persons" under § 1983, and can therefore be sued for their constitutional torts. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978). Municipalities and local governing bodies may be held liable under § 1983 when "execution of government's policy or custom . . . inflicts the injury." *Monell*, 436 U.S. at 691, 694 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). However, the holding in *Monell* applies only to local governments. 436 U.S. at 690 n. 54 ("Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes."). *See also Moriaty v. Rendell*, No. 3:08cv1532, 2009 WL 1458201, at *3 (M.D.Pa. 2009) ("The *Monell* standard, however, applies to the liability of municipalities, not individuals."). As employees of the State of Colorado, Defendants Hickenlooper, Davis, and Hernandez cannot be held liable in their individual capacities based on a government policy.

B.   State Law Claims

Mr. Ramminger alleges in his First Cause of Action that Defendants violated his rights under Colorado Constitution art. II, § 7. (See Doc. # 1-1 at 10 of 18 at ¶ 5(b)).  In his Second through Sixth Causes of Action, Mr. Ramminger alleges negligence, intentional infliction of emotional distress, false arrest, respondeat superior, malicious prosecution, and abuse of process by Defendants under state law. (*See* Doc. # 1-1 at 10-12 of 18).

First, "[s]ection 1983 does not . . . provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law." *Jones v. City & County of Denver, Colo.*, 854 F.2d 1206, 1209 (10th Cir. 1988). *See also Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) (allegation of violation of State Constitution does not give rise

to a federal cause of action under § 1983).   As Mr. Ramminger's claims pursuant to the Colorado Constitution are complementary to those asserting violations of the United States Constitution, the enforcement of his federal constitutional rights through Section 1983 provides an adequate remedy for his claims.   *See Board of County Commissioners of Douglas County v. Sundheim*, 926 P.2d 545, 549 (Colo. 1996) (declining to recognize an implied cause of action to enforce the Colorado Constitution via a § 1983 action).   Mr. Ramminger has no implied right of action to bring such state constitutional claims, and they are therefore properly dismissed without prejudice for lack of subject matter jurisdiction.

Second, Title 28 U.S.C. § 1367(a) grants supplemental or pendent jurisdiction to federal district courts over a plaintiff's state law claims which arise out of the same transaction or occurrence as the federal claims.   A district court has the discretion to decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction."   28 U.S.C. § 1367(c)(3).   *See also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").   As the court recommends dismissal of Mr. Ramminger's First Cause of Action, the only claim over which this court could have had original jurisdiction, the court may also decline to exercise jurisdiction over his claim for violation of the Colorado Constitution and his Second through Sixth Causes of Action.

Accordingly, IT IS RECOMMENDED that Defendants' "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (filed October 23, 2013) (Doc. # 13) be GRANTED:

1.   The First Cause of Action be dismissed with prejudice for failure to state a claim to

which relief can be granted and because any attempt to amend as to any of the allegations necessarily would be futile as a matter of law.

2. The Second through Sixth Causes of Action be dismissed without prejudice under Title 28 U.S.C. § 1367(a) for lack of supplemental jurisdiction.[3]

3. This civil action be dismissed in its entirety.

**Advisement to the Parties**

Within **fourteen days** after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo*

---

[3] "Generally, a dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect."  *Garman v. Campbell County Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010).

despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 10th day of March, 2014.

BY THE COURT:

   s/Craig B. Shaffer
United States Magistrate Judge